**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Danny Ray Walker, Jr., | No. CV15-02468-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W Colvin, | |
| Defendant. | |

Plaintiff Danny Ray Walker, Jr. seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.  Background.**

On July 20, 2012 Plaintiff applied for supplemental security income, alleging disability beginning June 24, 2011. On January 7, 2014, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified. On March 10, 2014, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the decision, making the ALJ's decision the Commissioner's final decision.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance, of relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 20, 2012. A.R. 19. At step two, the ALJ found that Plaintiff has the following severe impairments: bilateral chondromalacia patella and cervical and lumbar degenerative disc disease. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. *Id.* at 21. At step four, the ALJ found that Plaintiff has the RFC to perform:

> Sedentary work as defined in 20 CFR 416.967(a) except lifting and/or carrying a maximum of 20 pounds occasionally and 10 pounds frequently; standing and/or walking 4 hours in an 8-hour workday; sitting 6 hours in an 8-hour workday; but needs a sit/stand at will option; pushing and pulling within these weight restrictions; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, kneel, crouch, and crawl; frequently balance and stoop; and he needs to avoid concentrated exposure to hazards.

*Id.* The ALJ further found that Plaintiff has no past relevant work. *Id.* at 27. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id.* at 27-28.

## IV. Analysis.

Plaintiff argues that the ALJ's decision is defective for three reasons: (1) the ALJ failed to properly weigh medical source opinions, (2) the ALJ failed to properly weigh Plaintiff's reported limitations, (3) the ALJ did not properly weigh the report of Plaintiff's mother, Gayla Walker. Doc. 21. The Court will address each argument.

### A. Weighing of Medical Source Evidence.

Plaintiff argues that the ALJ improperly weighed the medical opinions of Dr. Abram Burgher and Dr. Larry Stark.

#### 1. Legal Standard

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Abram Burgher, M.D. and Larry Stark, D.O.

The opinions of Drs. Burgher and Stark were contradicted by the opinions of Drs. Karen Mansfield-Blair, Ph.D., Monte Jones, M.D., and Jensine Wright, M.D., each of whom opined that Plaintiff had greater abilities than those identified by Burgher and Stark. The ALJ could therefore discount the Burgher and Stark opinions for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

Drs. Burgher and Stark each completed a "Medical Assessment of Ability to do Work-Related Physical Activity" form and concluded that Plaintiff could not perform even sedentary work and would miss more than six days of work each month due to pain and fatigue. A.R. 543-46. Dr. Mansfield-Blair examined Plaintiff and found "no impairment" in completing a mental status examination, and that Plaintiff "has no problem attending to instructions, recalling details later, even after performing a distractor task, and is able to hold and manipulate information." *Id.* at 341. Dr. Jones performed two consultative examinations of Plaintiff and found that he had no limitations in his ability to sit and could stand or walk four hours a day. *Id.* at 455-57. Dr. Wright, a non-examining Physician who reviewed Plaintiff's file, largely agreed with Dr. Jones, but opined that Dr. Jones was too restrictive and that Plaintiff could actually stand or walk up to six hours a day. *Id.* at 115-116.

The ALJ afforded "little weight" to the opinions of Drs. Burgher and Stark for several reasons: (1) "they are brief, conclusory, and inadequately supported by clinical findings" (*id.* at 25); (2) they opined on whether Plaintiff was able to work, "an issue reserved for the Commissioner" (*id.* at 26); (3) they "primarily summarized in the treatment notes the claimant's subjective complaints, diagnoses, and treatment, but they did not provide medically acceptable clinical or diagnostic findings to support the functional assessment" (*id.*); (4) the opinions "are inconsistent with the objective medical findings as a whole" (*id.*); (5) their "own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled" (*id.*); (6) their opinions did not address conflicting information, such as Plaintiff's own reports that his medication regimen had been working quite well and that he obtained functional relief with low-dose opiates (*id.*).

These conclusions are preceded by several pages of careful analysis of Plaintiff's medical condition and records. The ALJ cites treatment notes (*id.* at 22), describes the results of physical examinations (*id.* at 24), and describes the results of medication, medical treatments, and x-rays (*id.* at 22-25). With few exceptions, examination findings throughout the record show that Plaintiff had full strength, normal coordination, intact sensation, normal gait, and no distress. *See id.* at 363, 369, 372, 400-01, 404-05, 451-53, 477-80, 482-83, 485-86. Although Plaintiff consistently self-reported pain levels at the top end of the scale, positive findings of pain were limited to "pain elicited by motion of the knee" and "tenderness on palpitation of the cervical spine. *Id.* at 477. As the ALJ noted, neither Dr. Burgher nor Dr. Stark attempt to reconcile such clinical findings with the limitations they recommend. It was not unreasonable for the ALJ to conclude that the clinical findings are not consistent with Drs. Burgher and Stark's view that Plaintiff cannot sit or stand for more than two hours a day and that Plaintiff's pain and fatigue are so severe that it would cause him to miss more than six days of work each month.

Nor was it unreasonable for the ALJ to give greater weight to the more thorough, better explained medical opinions of Drs. Jones and Wright over the conclusory forms

- 6 -

1  provided by Drs. Burgher and Stark.  Dr. Wright reviewed and considered the clinical
2  findings, and found that Plaintiff could perform light work with some postural and
3  environmental restrictions.  *Id.* at 108-14.  As the ALJ noted, Dr. Jones' opinion was
4  based on his notes from two examinations of Plaintiff and was largely consistent with the
5  findings of Dr. Wright. *Id.* at 25, 452-57.

6  Plaintiff argues that the forms submitted by Drs. Burgher and Stark are not
7  conclusory because they are supported by treatment records.  Doc. 21 at 9.  But the
8  treatment records are substantially a recitation of Plaintiff's personal complaints.
9  *See, e.g.*, A.R. 426-29 (listing Plaintiff's complaints with no objective evaluation).
10 Additionally, as the ALJ noted (*id.* at 26), the opinions of Drs. Burgher and Stark provide
11 no explanation or reasoning for their conclusions.  When a medical opinion offers no
12 reasoning and cites no clinical evidence, the opinion is more like a claimant's self-report
13 than a reasoned medical opinion.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th
14 Cir. 2008) ("An ALJ may reject a treating physicians opinion if it is based 'to a large
15 extent' on a claimant's self-reports that have been properly discounted as incredible.").
16 As discussed below, the credibility of Plaintiff's reports was properly discounted by the
17 ALJ.  Accordingly, the ALJ did not err in also discounting the conclusory opinions of
18 Drs. Burgher and Stark that are largely based on those same self-reports.

19 Plaintiff argues the ALJ erred by failing to cite to the record in support of her
20 conclusion that the treating source opinions are unsupported by "the objective medical
21 evidence as a whole."  *Id*. at 26.  But this statement by the ALJ is followed by the words
22 "already discussed above in this decision" (*id.*), and, as noted above, the ALJ engaged in
23 a thorough discussion of the medical evidence (*id.* at 22-26).  What is more, the ALJ
24 further explains her conclusion by noting that the treating physicians failed to address
25 evidence in the record conflicting with their opinions:

26  For example, treatment notes show that [Plaintiff] reported that he was doing fairly well on his current medication regimen and it has been working for him quite well [*id.* at 405]. In February, April, June, and August 2013, [Plaintiff] reported that he continued to obtain good functional relief and limited side effects with low-dose opiates [*id.* at 417, 421, 466, 470].

- 7 -

*Id.* at 26 (citations to record updated from original).

The ALJ also notes that the treatment notes underlying the treating physician's opinions are made up largely of Plaintiff's subjective complaints, diagnoses, and treatment history, but the notes provide no diagnostic findings or clinical support for the treating physicians' ultimate recommendations. *Id.* Plaintiff argues that the ALJ "cherry picked" evidence from the record to present Plaintiff as not disabled. Doc. 21 at 10-11. The Court disagrees. The ALJ's opinion considers all evidence in the record, including evidence that would seem to support the opinions of Drs. Burgher and Stark, such as findings of pain, an antalgic gait, and instances of failed treatment, but these findings were the exception throughout the record, not the norm. A.R. 24.

Plaintiff criticizes the ALJ for rejecting the opinions of Drs. Burgher and Stark because they addressed an issue reserved for the Commissioner. Doc. 21 at 12. By regulation, however, opinions on whether a claimant is disabled are entitled to no special weight. 20 C.F.R. § 416.927(d). Plaintiff argues that Drs. Burgher and Stark did not speak to whether Plaintiff was disabled, but rather opined only as to specific functional limitations such as his ability to sit, stand, walk, lift, and carry. But both concluded that Plaintiff cannot "perform work." A.R. 543, 545. This legal conclusion is entitled to no special weight, and it was not error for the ALJ to reject it. *See* 20 C.F.R. § 416.927(d).

Plaintiff also argues that the ALJ erred by rejecting the opinions of Drs. Burgher and Stark based on a finding that they were overly sympathetic and potentially motivated by a desire to avoid doctor/patient conflict. Doc. 21 at 12. The Commissioner agrees that such reasoning is not an adequate basis to reject a treating physician's opinion, but argues that in this case the error is harmless because the ALJ's decision notes that the opinions of Drs. Burgher and Stark "depart[] substantially from the rest of the evidence in the record." Doc. 22 at 13. The Court agrees. Given the specific and legitimate reasons the ALJ did provide, her comments on the doctors' possible motives does not invalidate her opinion.

1    Plaintiff next argues that "the ALJ's statement that there were no 'abnormal'
2 objective findings is inaccurate." Doc. 21 at 14. Plaintiff cites to the "January 2013 CT
3 scan of the cervical spine which revealed C3-4 moderate left foraminal stenosis and C5-6
4 bilateral foraminal stenosis and mild central canal narrowing with broad-based disc
5 osteophyte complex formation." *Id.* But the ALJ's decision acknowledges these results.
6 A.R. 24. What is more, the opinions of Drs. Burgher and Stark offer no interpretation of
7 the January 2013 CT scans; Dr. Wright's opinion, however, did consider these images,
8 and then recommended an RFC less restrictive than the one ultimately adopted by the
9 ALJ. *Id.* at 111-13.
10    Lastly, Plaintiff argues that "the ALJ's claim that there was no finding of 'atrophy
11 or possibly deconditioning' is insufficient to reject Drs. Burgher and Stark's
12 assessments." Doc. 21 at 14. But the ALJ does not rely merely on the lack of atrophy or
13 deconditioning as her basis for rejecting the opinions. She provides a number of other
14 specific reasons. A.R. 25-26. As discussed above, although Plaintiff consistently
15 complained of pain at the top end of the pain scale, his examinations often conflicted with
16 such reports and found pain only when Plaintiff moved his knee or had a palpitation in
17 his back. *See, e.g.*, *id.* at 477. Dr. Wright discussed the significance of this discrepancy.
18 *Id.* at 111-13. The Court cannot conclude that the ALJ erred by relying on the other
19 medical opinions rather than the brief and conclusory opinions provided by Drs. Burgher
20 and Stark.

### 3.  Crediting Non-Treating Physicians.

22    Plaintiff argues that the ALJ committed legal error by according the opinions of
23 Drs. Jones and Wright significant weight. Doc. 21 at 15-17. As discussed above,
24 however, the ALJ provided specific and legitimate reasons, drawn from the medical
25 record, to justify her decision to credit these opinions over those of Plaintiff's treating
26 physicians. Because the opinion of Dr. Wright was supported by independent clinical
27 findings, it constituted substantial evidence. *Thomas*, 278 F.3d at 957 ("The opinions of
28 non-treating or non-examining physicians may also serve as substantial evidence when

the opinions are consistent with independent clinical findings or other evidence in the record.") (citation omitted).  Dr. Jones' opinion was based on a more limited review of the record, but was the result of two direct examinations of Plaintiff and was consistent with other examination findings in the record.  The Court concludes that the ALJ's decision to credit these opinions was not legal error.

Plaintiff argues that Drs. Jones and Wright could not have reviewed the record in a meaningful way because one opinion, that of Mona Amin, D.O., was not given until after Dr. Jones completed his examinations and after Dr. Wright had issued her opinion.  Doc. 21 at 17.  But nothing in Dr. Amin's report is inconsistent with the prior records reviewed by Dr. Wright or with the findings of Dr. Jones.  Dr. Amin noted that Plaintiff complained of constant pain, but examination found normal extremities with no swelling.  A.R. 485-86.  The only positive pain findings were that the "[c]ervical spine showed tenderness on palpation," and "[p]ain was elicited by motion of the knee."  *Id.*  The ALJ did not commit error by relying on the opinions of Drs. Jones and Wright.

### B.     The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis:  (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

The Social Security Administration recently issued Social Security Ruling 16-3p, 2016 WL 1119029 (March 16, 2016) ("SSR 16-3p"), which provides new guidance for ALJs to follow when evaluating a disability claimant's statements regarding the intensity, persistence, and limiting effects of symptoms.  SSR 16-3p replaces Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p").  SSR 16-3p eliminates the term "credibility" used in SSR 96-7p in order to "clarify that subjective symptom

1  evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL
2  1119029, at *1. Although SSR 16-3p was issued after the ALJ's March 2016 decision, it
3  is consistent with Social Security's prior policies and with prior Ninth Circuit case law.
4  Both policies set forth a two-step process to be followed in evaluating a claimant's
5  testimony and contain the same factors to be considered in determining the intensity and
6  persistence of a claimant's symptoms. Because 16-3p clarifies rather than changes
7  existing law, the Court will consider the ALJ's evaluation of Plaintiff's subjective
8  complaints in light of SSR 16-3p.

9  The ALJ engaged in the two-step process. She first found that Plaintiff's
10 medically determinable impairments could reasonably be expected to cause the alleged
11 symptoms. She then found Plaintiff's statements regarding the intensity, persistence, and
12 limiting effects of the symptoms not credible to the extent they are inconsistent with the
13 ALJ's residual functional capacity assessment. In other words, the ALJ found Plaintiff's
14 statements not credible to the extent he claims he is unable to perform in a competitive
15 work environment.

16 At the January 2014 hearing, Plaintiff testified that his neck pain caused numbness
17 in his right arm and hand, his back and knee pain was constant, and he was forced to
18 "alternate between sitting up, laying down, you know, sitting sideways" after short
19 periods of time. A.R. 44-45. Plaintiff stated that his pain averages 8 out of 10, even with
20 medication, and half of the time he can only think about the pain. *Id.* at 54. Plaintiff
21 testified that he cannot lift more than ten pounds or sit more than 20 minutes, and has
22 problems using his hands. *Id.* at 45, 50, 55-56. Plaintiff also testified that he showers
23 unassisted, does his own laundry, tries to do the dishes, sweeps, goes to the grocery store,
24 and drives with some discomfort. *Id.* at 51-52, 58. Plaintiff stated that he spends the day
25 trying not to be in pain, has no social life, but enjoys writing poetry, watching television,
26 and going to the lake. *Id.* at 58, 63-65.

27 The ALJ gave the following reasons for finding Plaintiff's testimony not fully
28 credible: (1) Plaintiff's activities demonstrate the physical and mental abilities and social

interactions necessary to obtain and maintain employment and are inconsistent with the presence of an incapacitating or debilitating condition, (2) Plaintiff's medical record reveals that treatment and medications have been generally successful in controlling his symptoms, (3) Plaintiff last worked in 2003, some eight years before filing for SSI in 2011, and he stopped working because he was laid off. *Id.* at 22-23. The Court finds that the ALJ did not err in evaluating Plaintiff's credibility.

The ALJ found that "claimant's allegations concerning the intensity, persistence and limiting effects of his symptoms are less than fully consistent and credible." A.R. 22. She found that some of Plaintiff's daily activities "are inconsistent with the presence of an incapacitating or debilitating condition." *Id.* This was not error. Plaintiff testified that he is in constant pain that averages 8 out of 10 in severity, that half the time he can only think about pain, and that during the day he just tries not to be in pain and has no social life. *Id.* The ALJ noted, however, that Plaintiff drives, goes to the grocery store, cares for his personal needs, performs some chores, does his own laundry, enjoys going to the lake, and has travelled in a limited manner with his fiancé. *Id.* These daily activities do not constitute a basis for concluding that Plaintiff is not disabled – complete incapacitation is not required before benefits are available – but such activities may be considered when evaluating Plaintiff's testimony of daily debilitating pain. *Molina*, 674 F.3d at 1113 ("The ALJ could reasonably conclude that Molina's activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering from debilitating panic attacks."). The Court concludes that this was a legitimate and specific reason for discounting Plaintiff's testimony.[1]

---

[1] The ALJ also concluded that Plaintiff's daily activities were akin to those required to work. A.R. 22. The Commissioner concedes that this conclusion is unwarranted (Doc. 22 at 21), but the Court does not find that it invalidates the ALJ's entire conclusion. The ALJ also considered Plaintiff's daily activities as inconsistent with Plaintiff's own testimony about his limitations (A.R. 22), a credibility consideration that is appropriate. *See Molina*, 674 F.3d at 1113.

- 12 -

The ALJ noted that Plaintiff responded positively to treatment and medication for his impairments. *Id.* at 22. Plaintiff argues that these reports represent only short periods of relief, and do not indicate a successful treatment. Doc. 21 at 21-22. As mentioned above, however, examination findings throughout the record show that Plaintiff had full strength, normal coordination, intact sensation, normal gait, and no distress. A.R. 363, 369, 372, 400-01, 404-05, 451-53, 477-80, 482-83, 485-86. The ALJ cites these portions of the record. *Id.* at 24-25. The ALJ also cites specific portions of the record showing that Plaintiff reported he was doing well on his medications, that in February, April, June, and August 2013 Plaintiff reported good functional relief from his medications, that he reported good relief from injections and excellent relief from cervical facet blocks, and that he reported improved pain from changes in his medications. *Id.* at 22-23, 24. The only evidence in the record that treatment and medication were not successful appears to be found in reports given by Plaintiff himself, but even these are inconsistent with other reports he gave his physicians. *See id.* at 470 (Dr. Burgher's treatment notes indicating that Plaintiff says he "continues to obtain good functional relief and limited side effects with low-dose opiates."); *id.* at 421 ("[Plaintiff] had excellent relief with cervical facet blocks."); *id.* at 361("[Plaintiff] reports improvement in pain with the change of his medication last month."). The Court concludes that Plaintiff's positive response to treatment and medication constitutes a specific, clear, and convincing reason provided by the ALJ for discounting his testimony, and that it is supported by substantial evidence. *Orn*, 495 F.3d at 630 (substantial evidence is more than a scintilla, less than a preponderance, and enough relevant evidence for a reasonable person to accept as adequate to support a conclusion, considering the record as a whole).

The ALJ also noted that Plaintiff has not worked since 2003, some eight years before his disability date, and that he stopped working for reasons unrelated to medical impairments. A.R. 23. Plaintiff argues against this inference, stating that "medical illness does not inflict limitation on only those who have consistently worked," and that Plaintiff has "tried to work." Doc. 21 at 23. The Court is not persuaded that this was an

1  improper consideration by the ALJ.  Plaintiff testified that he is not working because his
2  medical condition prevents him from working.  A.R. 43.  And yet Plaintiff testified that
3  he last worked in 2003 and that he stopped working because his hours were reduced and
4  he was told he was not needed any more.  *Id.* at 23.  The ALJ did not err in noting that
5  this evidence calls into question Plaintiff's testimony that he is not working due to his
6  medical disability.[2] *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) ("Thomas
7  had an 'extremely poor work history' and 'has shown little propensity to work in her
8  lifetime,' which negatively affected her credibility regarding her inability to work.").

9  The Court finds that the ALJ provided specific, clear, and convincing reasons,
10  supported by substantial evidence, to discount the credibility of Plaintiff's testimony.

### C. The ALJ Did Not Err in Evaluating Third Party Credibility.

12  If an ALJ wishes to discount the testimony of a lay witness, he must give reasons
13  that are germane to each witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).
14  In September 2013, Plaintiff's mother, Gayla Walker, completed a third-party function
15  report.  A.R. 290-97.  The ALJ declined to rely on this report for several reasons:  (1) it
16  "appear[s] to be no more than an echoing of the subjective complaints already testified to
17  by the claimant"; (2) the medical records and opinions of physicians show that Plaintiff's
18  limitations are not so limiting; and (3) Ms. Walker indicated that Plaintiff cannot sit or
19  stand for more that 15-20 minutes, but this is inconsistent with Plaintiff's daily activities
20  of writing poetry and using a computer.  *Id.* at 23.

21  Plaintiff argues that Ms. Walker's report is more credible because it is consistent
22  with Plaintiff's own testimony.  Doc. 21 at 24.  Plaintiff also argues that her report is
23  supported by the medical opinions of Drs. Burgher and Stark, and that there is no
24  evidence in support of the ALJ's proposition that the reported limitations are inconsistent
25  with writing poetry or using the computer.  *Id*.

---

[2] The Court does not agree with Plaintiff's suggestion that this constitutes an improper focus on his character.  The ALJ considered this evidence for its effect on the veracity of his testimony, noting that it "raises questions as to whether the claimant's continuing unemployment is actually due to medical impairments" as he testified. A.R. 23.

- 14 -

Plaintiff overstates the test for discounting Ms. Walker's report. The ALJ must provide only "germane" reasons. *See Lewis*, 236 F.3d at 512 ("the ALJ at least noted arguably germane reasons for dismissing the family members' testimony, even if he did not clearly link his determination to those reasons."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason."). The Court concludes that the ALJ provided germane reasons for discounting Ms. Walker's report when he relied on the medical record and the opinions of other physicians. As discussed above, the ALJ described contradictions between Plaintiff's testimony (largely echoed in Ms. Walker's report) and the medical record, and gave appropriate reasons for choosing to credit the opinions of Drs. Jones and Wright. These were germane reasons for discounting the third party report. *See Lewis*, 236 F.3d at 512.

## V. Conclusion

The ALJ did not err in in discounting the weight of the treating physicians opinions, discounting the credibility of Plaintiff's testimony, or discounting the weight of the third party report. Accordingly, the Court will affirm the decision.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 5th day of December, 2016.

_____
David G. Campbell
United States District Judge